UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SUSAN R. SPICHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:13-CV-304-TLS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Plaintiff, Susan R. Spicher, seeks review of the final decision of the Defendant, Carolyn Colvin, Commissioner of the Social Security Administration, denying the Plaintiff's application for Social Security-Disability Insurance Benefits and Supplemental Security Income disability benefits. On May 28, 2010, the Plaintiff prospectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning August 1, 2003, in both applications. An Administrative Law Judge (ALJ) held a hearing on January 19, 2012, and rendered a "partially favorable" decision on May 30, 2012, where the ALJ found that the Plaintiff was not disabled from August 1, 2003 until May 30, 2012, but became disabled on the latter date. The Plaintiff requested review of the ALJ decision, and on August 27, 2013, the Appeals Council denied the Plaintiff's request for review [ECF No. 12]. As a result of the denial, the ALJ's decision became the Commissioner's final decision. 20 C.F.R. § 422.210(a). On October 18, 2013, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision [ECF No. 1].

All briefs by the parties have been submitted, and the Complaint is ripe for review.

For the reasons discussed below, the Commissioner's decision is reversed and remanded for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. 20 C.F.R. § 404.981; *Minnick v. Colvin*, 775 F.3d 929, 931 (7th Cir. 2015). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" concerning whether the Plaintiff is disabled, this Court must nevertheless affirm the ALJ's decision if the decision is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This Court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

The ALJ is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact. *Butera v. Apfel*, 176 F.3d 1049, 1055 (7th Cir. 1999) (citing *Perales*, 402 U.S. at 399–400). The ALJ is not required to address every piece of evidence or

testimony presented, but must adequately discuss the issues and must provide a "logical bridge" between the evidence and the conclusions. *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Though the Court conducts a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, "we will uphold a decision so long as the evidence supports it and the ALJ explains his analysis of that evidence with enough detail and clarity to permit meaningful appellate review." *Echstadt v. Astrue*, 534 F.3d 663, 665–66 (7th Cir. 2008). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

Under the Social Security Act (the Act), the Social Security Administration (SSA) is authorized to pay disability insurance benefits and supplemental security income only to persons who can establish disability under the terms of the Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A person qualifies as disabled, and is thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(A)–(2)(A), § 1382c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 22 (2003). The Social Security Regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(I)–(v).

The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574–404.1575 and 416.974–416.975. The ALJ found that the Plaintiff had not engaged in SGA since the alleged onset date of August 1, 2003. (Administrative R. 17.) At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). The ALJ found that the Plaintiff has had several severe impairments since the alleged onset. In the third step, the ALJ must determine whether, since the alleged onset date, the Plaintiff has had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525–404.1526, 416.920(d), 416.925–416.926. The ALJ did not find that the Plaintiff's impairments or combination of impairments met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. This requires the analysis to proceed to step four.

Before the step four analysis can take place, the ALJ must determine the residual functional capacity (RFC) of the Plaintiff. An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R § 404.1520(e); 20 C.F.R. § 416.920(e). In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p. The ALJ found that the Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the

following limitations:

> [s]he can lift ten pounds occasionally and frequently; can stand and walk for at least two hours in an eight-hour work day but requires a hand-held assistive device to walk for even short distances but the contralateral extremity can be used to lift and carry; can sit for about six hours in an eight-hour work day; is limited in the use of her lower extremities and cannot work foot controls; can never climb ladders, ropes or scaffolds; can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to extreme cold and heat, wetness and humidity; and must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. and to hazards such as slick, uneven surfaces and unprotected heights.

(Administrative R. 20–21.) Once the RFC is determined, the ALJ uses that RFC in step four to determine if the Plaintiff is able to perform any past relevant work.

In this case, the ALJ concluded that the Plaintiff cannot perform any past relevant work, which included cabinet making and newspaper delivery. When the Plaintiff cannot perform any past relevant work considering their RFC, the analysis proceeds to the fifth and final step. At the last step of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any other work considering the Plaintiff's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the Plaintiff can perform, given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), and 416.960(c). The ALJ determined, after giving significant weight to the vocational experts testimony, that jobs existed in significant numbers in the national economy that the Plaintiff could perform prior to May 30, 2012. The ALJ further ruled that the Plaintiff became disabled on May 30, 2012, rendering a "partially favorable" decision.

The Plaintiff argues two bases for reversal of the "partially unfavorable" portion of the decision by the ALJ. First, the Plaintiff contends that the ALJ did not properly evaluate obesity in the aggregate with the Plaintiff's other impairments. Second, the Plaintiff contends that the ALJ erred by failing to award at least a "period of disability" and by failing to provide a meaningful explanation for the conclusion that there had been no twelve-month period in which the Plaintiff was unable to sustain full-time work between the Plaintiff's alleged onset of disability date (August 1, 2003) and the disability date adjudged by the ALJ (May 30, 2012).

First, the Plaintiff contends that the ALJ did not properly evaluate obesity in the aggregate with the Plaintiff's other impairments. This Court finds that obesity was not properly considered by the ALJ, and that the ALJ's failure to explicitly consider the Plaintiff's obesity along with her other impairments was not harmless error. It has been clearly established that a weight or obesity issue should be considered amongst the aggregate effect of all impairments, serious or non-serious. *Clifford*, 227 F.3d at 873. The Plaintiff argues that the ALJ provided a cursory analysis without "meaningful review," and that the Plaintiff's morbid obesity should have been granted greater influence in the ALJ's RFC analysis. (Pl.'s Br. 15.) The Court does not conclude whether obesity should have been granted more influence in the RFC analysis, but the Court finds that the ALJ did not provide sufficient analysis in her Order for a "meaningful review" regarding the Plaintiff's obesity. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (finding that the ALJ's failure to articulate reasons for not considering the opinions of the plaintiff's treating physicians prevented the court from engaging in a meaningful review of the ALJ's decision).

The Court cannot engage in a "meaningful review" of the ALJ's Order regarding the consideration of obesity, which is listed as a severe impairment, due to the lack of explanation in

the Order. The ALJ included in the third subheading, which in bold lists the ALJ determined severe impairments, "[m]orbid obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c))." (Administrative R. 18.) The ALJ goes on to state in the next paragraph that "[t]he claimant's severe impairments are *discussed in more detail below*." *Id.* (emphasis added). That discussion, however, never takes place regarding any of the severe impairments. The ALJ proceeded to explain the Plaintiff's elbow fracture in 2008 (ruled a non-severe impairment) and her medically determinable mental impairment, but otherwise no further discussion takes place regarding any of the other severe physical impairments, including the Plaintiff's morbid obesity. When the ALJ gets to the RFC analysis of her Order, the Plaintiff's obesity and other severe impairments are again not adequately addressed. In the RFC analysis explanation, the ALJ provides only four factual statements regarding the Plaintiff's obesity, capped at the end of the analysis with boilerplate language.[1]

The Defendant bases the assertion of proper review of the Plaintiff's obesity on the ALJ's reliance on the state agency physicians' opinions, which states that the Plaintiff has been morbidly obese since the alleged onset date. The ALJ explicitly states that she gave "[s]ignificant weight to the state agency physicians' assessment which is generally consistent with the medical evidence." (Administrative R. 24.) Yet, the ALJ must explain the weight given to a state agency physician's opinion. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (finding error by the ALJ for failing to consider the state agency physician opinion and failing to explain the weight it

---

[1] "The undersigned is persuaded that the residual functional capacity determined in this Finding adequately takes into account the claimant's obesity and all of the symptoms, including pain, which are caused by the claimant's impairments which are supported by the medical and other evidence, including the testimony at the hearing." (Administrative R. 24.)

gives to the state agency physician opinion); S.S.R. 96–6p. This requirement is not satisfied by the ALJ in the present case, and subjects the failure to explain the weight given to the state agency physicians' testimony to "[h]armless error review." *Schomas*, 732 F.3d at 707 (finding harmless error by the ALJ for leaving out why he gave state agency physician opinion significant weight if the result would not be any different on remand and the RFC analysis was consistent with the medical evidence).

Here, it was not harmless error for the ALJ to fail to explain why the ALJ gave the state agency physicians' opinion significant weight because, due to a failure to discuss fully the obesity issue, the Court cannot say with any certainty whether the result would be any different on remand. This case is distinguishable from *Schomas v. Colvin*, 732 F.3d at 707, *McKinsey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011), and *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006), which are cases where the ALJ did find harmless error. In *Schomas*, the ALJ's decision was affirmed simply because the error the ALJ committed did not prejudice the plaintiff. 732 F.3d at 707 (finding that although the ALJ should have better articulated the reasoning for giving the state agency physicians' assessments more weight, such error was harmless because a different conclusion could not possibly be reached on remand, because two different state agency physicians made RFC assessments which came to the same conclusion). Similarly in *McKinsey*, the court stated that even though the case would not be any different on remand, there was still a clear error by the ALJ for failing to explain the weight given to the state agency physicians' testimony. 641 F.3d at 891 (finding that although the ALJ's failure to explain the weight given to state agency physician's testimony was error, such error was harmless because the ALJ's finding was similar to the treating physicians' findings, which should have been given greater weight).

8

Furthermore in *Prochaska*, the court found that even though it has been abundantly clear since the ruling in *Clifford v. Apfel* that obesity must be considered among the aggregate effects of the plaintiff's other impairments, if the ALJ adopts "'[t]he limitations suggested by the specialists and reviewing doctors' who were aware of the condition," even though the ALJ does not explicitly consider the effects of obesity, it may be harmless error. 454 F.3d at 736–737 (ALJ implicitly considered plaintiff's obesity through ALJ's review and discussion of plaintiff's doctors' reports who did discuss her weight); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (affirming ALJ decision because obesity was indirectly factored into ALJ's decision as part of the doctors' opinions).

In contrast to *Schomas*, *McKinsey*, and *Prochaska*, the ALJ in this case relies almost exclusively on the state agency physicians and Dr. Strong's testimonies, which, in and of themselves, are deficient in discussing the aggregate effect of the Plaintiff's obesity. In contrast to *Prochaska*, where multiple treating physicians and other doctors discussed the plaintiffs weight along with the state agency physicians, the state agency physician in this case devotes a single line of analysis acknowledging the Plaintiff's obesity.[2] Remarkably, the two other state agency physicians that reviewed the original determination provide no comments and simply signed their agreement with the analysis. Consultative Examiner Dr. Strong provided a marginally deeper look at the obesity issue, but this is only to add that "[s]he is severely overweight and the less that she ambulates, the worse this problem will get so I recommend she does not have a completely sedentary job. She reports she can ambulate 20 minutes at a time, so I

---

[2] "Explain how and why the evidence supports your conclusions in item 1 through 5.
   Cite the specific facts upon which your conclusions are based.
   AOD 8/1/03.
   Clmt is morbidly obese noted since AOD."

9

recommend that she can ambulate for up to 20 minutes at a time, as longs as she is given adequate rest in between those 20 minute intervals in a work type setting." (Administrative R. 741–42).[3] The Court cannot determine if the ALJ adequately considered the Plaintiff's obesity when the ALJ failed to explain the reasoning behind its decision to decline the above recommendation, the only recommendation from any medical document in the record in regards to the Plaintiff's obesity. The ALJ clearly stated that "[The ALJ] has given significant weight to the State agency physicians' assessment which is generally consistent with . . . Dr. Strong's consultative examination report and opinion." (Administrative R. 24.) It is clearly stated that Dr. Strong's testimony is consistent with the state agency physicians' testimony and the rest of the evidence. So the fact that Dr. Strong's recommendation, if truly consistent and the most any doctor in the record said about the Plaintiff's obesity, was left out of the ALJ's RFC finding for the Plaintiff reveals that obesity was not adequately figured into the analysis. Leaving out Dr. Strong's recommendation is not itself reversible error, but when the ALJ provides no other analysis of the Plaintiff's obesity, this Court is unable to discern whether or not obesity was properly considered by the ALJ. It is true, as the Defendant contends, that a state agency

---

[3]Consultative Examiner Dr. Strong's testimony and the state agency physicians' testimony was consistent except for one single recommendation. The Plaintiff refers to Dr. Strong's testimony as implying a "[c]ontinuous ambulating *requirement*," (emphasis added), differing from the state agency physicians, but that is not in fact what Dr. Strong's testimony included. (Pl.'s Br. 15.) Dr. Strong's testimony, at its foundation, was exactly the same as the state agency physicians', which found that the Plaintiff was restricted in how long she can sit, stand, carry, and walk because of her serious and non-serious impairments. The conclusions were all the same: the Plaintiff could perform sedentary work with some restrictions. Dr. Strong simply provided the added *recommendation* that the Plaintiff not have a completely sedentary job where she is able to ambulate for twenty minutes at a time in order to fight her obesity. The ALJ was not required to accept this recommendation as part of the RFC, because the ALJ's RFC finding is required to be a statement of the most a claimant is able to do in light of her combined impairments. 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations"). Thus, the Plaintiff is incorrect in stating that the ALJ had to incorporate all of Dr. Strong's recommendations into its RFC analysis, and that itself is not a reason for reversal.

physician that reviewed all the evidence strengthens the weight of their conclusions.[4] *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Yet, it is not the state agency physicians' conclusions that are in question in this case. They very well might be correct. What requires remand in this case is the fact that the ALJ did not provide enough clear and detailed reasons to permit a meaningful review of whether obesity was properly factored in the Plaintiff's RFC analysis. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

Our recent ruling in *Stephens v. Colvin*, raised in support by the Plaintiff's Reply Brief, is consistent with the Court's finding that the ALJ did not properly consider the obesity of the Plaintiff. *Stephens v. Colvin*, 1:13-CV-66, 2014 WL 1047817 (N.D. Ind. March 18, 2014); Reply, 4. Where the ALJ in *Stephens* failed to elaborate on the obesity consideration in her analysis beyond noting that "[S]tephens had a BMI of 37.7 in June 2008, and that he weighed 278 pounds in June of 2010," the ALJ in this case similarly made simple factual statements without accompanying analysis. (Administrative R. 22–24). As stated in *Stephens*, failure to consider the effect of obesity is subject to harmless-error analysis. Yet, the Court cannot conduct a harmless-error analysis when there is not enough analysis by the ALJ to permit meaningful review. Similar to *Stephens*, where the ALJ did not even address the plaintiff's obesity argument, here the ALJ failed to explain how obesity was factored into the RFC analysis besides simply giving weight to the state agency physicians' conclusions. The Defendant states that the ALJ acknowledged the Plaintiff's obesity, but the bare statements of her weight at certain dates and stating the Plaintiff is on a diet program does not provide enough detail or clarity to provide a meaningful review, especially in light of the fact that the ALJ considered the obesity severe enough to list in the

---

[4]There is no evidence demonstrating the state agency physicians in fact reviewed all the evidence in this case, although the Court presumes that they have.

Plaintiff's severe impairments. *Arnett*, 676 F.3d at 591–92. The ALJ is required to do more than acknowledge the Plaintiff's obesity. She must also explain how that factored into her analysis. In conclusion on this point, the ALJ did not provide clear enough of a "logical bridge" between her conclusions about the Plaintiff's RFC and her reasoning pertaining to obesity to provide a "meaningful review." *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008). On remand, the ALJ should evaluate whether the Plaintiff's obesity further impacted the gravity of the Plaintiff's alleged disability in the aggregate of all her severe impairments listed in the ALJ's Order at subheading three and the Plaintiff's non-severe impairments. The ALJ should evaluate the Plaintiff's obesity since the alleged onset date through May 30, 2012, because her weight has fluctuated greatly since the alleged onset date.

Second, the Plaintiff argues that there should have been an award of a "closed period of disability" starting about June 3, 2004 (date of the motor vehicle accident), through May 21, 2008 (orthopaedic follow-up ended after third surgery). (Pl.'s Br. 19). There is no doubt, considering the evidence, that the Plaintiff was unable to work for a period of time after the accident. The question for the ALJ, however, was whether there was an "[i]nability to engage in any substantial gainful activity . . . which has lasted or can be expected to last for a continuous period of *not less than 12 months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added). The Defendant sufficiently asserted and supported with evidence that the Plaintiff was not disabled for a continuous twelve-month period from the alleged onset date until August 2007, and from June 29, 2009, until the determination date of disability on May 30, 2012. Yet, the ALJ does not put forth substantial evidence to support her conclusion of no disability from approximately August 2007 to June 2009. If there is substantial evidence in the record to support the ALJ's conclusion,

the ALJ again does not provide enough support or factual evidence for this Court to engage in a "meaningful review." *Scrogham*, 765 F.3d at 695. Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

Here, a cursory glance at the evidence from August 2007 to June 2009 establishes that the Plaintiff's leg had not healed properly and required another surgery, the Plaintiff had to deal with a severely fractured elbow, and the Plaintiff was still dealing with obesity and her other severe ailments. "Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The only discussion from the ALJ on the Plaintiff's disability during the 2007–2009 time period is that it was reported she walked without an assistive device when she fractured her elbow in 2008, and that despite noting several disabling limitations she did not follow up for any treatment past June 2009 until she began treatment at Heart City Health City. (Administrative R. 18, 23.) "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). The medical evidence is clear that ever since the leg shattering auto accident in 2004, the Plaintiff has used an assistive device to walk. The ALJ cannot use a minor contradiction of a very lengthy record to form the logical bridge from the evidence to the ALJ's conclusion of no disability. The ALJ must support her position with more substantial evidence, if it exists, in order for the Court to engage in a meaningful review of a decision to deny disability.

13

The medical evidence indicates that the motor vehicle accident occurred in June 2004; the Plaintiff was then released for sedentary work in November of 2004. There are no medical records from April 2005 (final visit regarding second surgery on the left leg and right ankle) until June 2007. During a June 2007 emergency room visit regarding pain in her left leg, it was determined that the fracture in the Plaintiff's leg, after three years and three surgeries, had still not healed properly. She was readmitted for surgery on August 28, 2007. The surgery was not very successful, and the Plaintiff still complained of the same amount of pain and weakness. She then broke her left elbow and had surgery on July 12, 2008. On July 30, 2008, her doctors requested second opinions on the continued failure of her left leg to heal since the automobile accident and the most recent surgery in 2007. They made the finding that any further treatment or surgery must wait until after her elbow had healed. (Administrative R. 652.) It was not until June 16, 2009 that her left elbow had rehabilitated to a point that her doctor felt comfortable to discharge her from his care. (Administrative R. 716.) There are no other records regarding her leg or elbow past June 2009. The ALJ must consider the waxing and waning of symptoms with time. *Scrogham*, 765 F.3d at 696. Considering the discussion of obesity above, along with all the Plaintiff's other impairments that are not discussed fully, there is some evidence to support a closed period of disability here. The Plaintiff's left leg could not be reevaluated after the August 2007 surgery until June 16, 2009 for further treatment because of the Plaintiff's elbow injury, the Plaintiff's elbow was not fully healed until June 16, 2009, and the Plaintiff had many of the other severe impairments discussed above. Yet, the ALJ's Order does not provide sufficient analysis for a meaningful review of the ALJ's decision to deny a closed period of disability. On remand,

the ALJ should evaluate more thoroughly whether there is a closed period of disability at any time since the alleged onset date of August 1, 2003, especially between June 2007 to June 2009.

Finally, although not contested by the Plaintiff, the ALJ appears to make a credibility assessment under subheading five, stating that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the disabling intensity, persistence and limiting effects of these symptoms are not persuasive, because they are not fully consistent with or supported by evidence." (Administrative R. 22–23.) This may very well be true, and a review of the evidence by this Court reveals that the credibility determination may have merit. There are many self-completed medical documents presented by the Plaintiff in the record over her lengthy medical history, and none are entirely consistent with each other. *Compare* (Administrative R. 616, 425, and 585) *with* (Administrative R. 469 and 608). This inconsistency is not explained and also occurred during the Plaintiff's testimony that took place before the ALJ. However, the ALJ has not explained this credibility finding, preventing the Court from engaging in a meaningful review of the decision. *Scrogham*, 765 F.3d at 695; *see also Craft*, 539 F.3d at 678 (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007))("The determination of credibility must contain specific reasons for the credibility finding. The finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning."); S.S.R. 96–7p. On remand, the ALJ must provide more analysis of the Plaintiff's credibility assessment, and support her finding with specific facts and examples.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED for proceedings consistent with this opinion.

SO ORDERED on August 7, 2015.

/s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT